

DUNCAN W. KEIR
U. S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | | |
|---|---|---|---|
| In Re: | * | | |
| **LUMINENT MORTGAGE CAPITAL, INC.,** | * | Case No. | **08-21389** |
| **LUMINENT CAPITAL MANAGEMENT, INC.,** | * | | **08-21390** |
| **MAIA MORTGAGE FINANCE STATUTORY TRUST**, | * | | **08-21391** |
| **MERCURY MORTGAGE FINANCE STATUTORY TRUST,** | * | | **08-21392** |
| **MINERVA CDO DELAWARE SPV LLC**, | * | | **08-21393** |
| **MINERVA MORTGAGE FINANCE CORPORATION**, | * | | **08-21394** |
| **OT REALTY TRUST,** | * | | **08-21395** |
| **PANTHEON HOLDING COMPANY, INC.,** | * | | **08-21396** |
| **PROSERPINE, LLC,** | | | |
| **SATURN PORTFOLIO MANAGEMENT, INC.,** | * | | **08-21397** |
| | * | **Chapter** | **11** |
| | * | **Jointly Administered Under** | |
| | * | **Case No. 08-21389-DK** | |
| Debtors. | * | | |

**ORDER DENYING DEBTORS' MOTION AUTHORIZING THE DEBTORS TO OBTAIN
POST-PETITION, SECURED, SUPER-PRIORITY FINANCING**

Before the court is the Debtors' Motion for Entry of an Order Pursuant to Sections 105, 363, 364 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014, (A) Authorizing the Debtors to Obtain Post-Petition Secured Financing on an Interim and Final Basis, (B) Approving Agreements Relating to the Foregoing (the "DIP Financing Motion") and the objection

1

thereto by the Official Committee of Unsecured Creditors (the "Committee").  The Debtors' Motion requests relief under cash collateral provisions as well as approval of a postpetition credit facility of $3,242,000 to be funded by the largest secured and unsecured creditor of the Debtors, Arco Capital Corporation Ltd. ("Arco Capital").

On September 15, 2008, this court entered an Interim Order (I) Authorizing the Debtors to Obtain Post-Petition, Secured, Super-Priority Financing, and (II) Scheduling a Final Hearing (the "Interim Order").  The Interim Order authorized the Debtors to borrow up to $400,000 during the interim period, and set the hearing for the Final Order on the relief requested in the Motion for September 29, 2008.

On September 29, 2008, at the hearing upon final approval, the Debtors presented the court with a proposed order (the "Proposed Final Order") of which it was seeking approval and which was agreed to by Arco Capital.

The Committee's Objection argued that Arco Capital should not be granted certain rights contained in the Loan Agreement and Proposed Final Order.  Among those rights objected to by the Committee are a grant of a lien on avoidance actions, a super priority administrative claim, an assertion that the financing contained a mechanism for a "creeping roll-up," and that the Order should not contain waivers of rights under Sections 506(c), 551, 552(b), or that such waiver should terminate upon default under the Post Petition Loan and Security Agreement ("Loan Agreement").  Numerous other objections are listed including, but not limited to, an objection that a restriction on assertions of rights under Section 105(a) of the Bankruptcy Code should not be permitted as to the Committee.

After statements by counsel for the Debtors, Arco Capital, and the Committee, evidence was taken from one witness, the President and Chief Executive Officer of the Debtors.  Before final argument commenced, the court informed counsel that it had concerns as to some language

2

contained in the Proposed Final Order, most, if not all, being also the subject of some of the objections by the Committee.  The specific points to which the court called attention are as follows:

        A.      A provision which would order that no party could assert any position at a hearing occurring by reason of an event of default except as to whether such event had occurred and had been cured.  The court expressed concern as to this prospective limitation on the right by a party not present nor signatory to the Loan Agreement, to assert and be heard on otherwise justiciable issues in the case.

        B.      Similarly, the court called into question a provision which provides that no party in interest may seek an order pursuant to Section 105 of the Bankruptcy Code to stay or modify the provisions of the final order or the Loan Agreement with respect to the exercise of rights and remedies by Arco Capital.  While the court pointed out that Section 105 is not a limitless grant of authority, it is provided by Congress for the purposes as stated therein and the Proposed Final Order appeared to attempt to read it out of the Code as to all persons concerning future events.

        C.      Paragraph 13 of the Proposed Final Order would provide that no expenses of this case nor any "successor case" could be charged or recovered from the collateral being granted to Arco Capital, pursuant to Section 105 or Section 506(c) of the Bankruptcy Code.  As Section 506(c) is only exercisable by a trustee (*see Hartford Underwriters Ins. Co. v. Union PlantersBank, N.A,* 530 U.S. 1, 120 S.Ct. (2000)), and the events which could conceivably justify such a surcharge would all have to occur, or fail to occur in the future, the court's concern was as to an advisory ruling against parties not present, and the effective elimination of a section from the Bankruptcy Code that was provided for by Congress.

        D.      Finally, the court expressed concern as to the broad release from liability afforded to Arco Capital by the proposed Order as to any liability to any third party and a prospective finding that (regardless of what actions Arco Capital would take in the future), Arco

Capital should not be deemed in control of the operations of the Debtors.

At the conclusion of the oral argument, the court announced that it would deny all of the objections of the Committee with the exception of the four points enumerated above in this Order. As to those points, the court invited the parties to submit such points and authorities as they deemed appropriate by 4:30 p.m..[1] The court promised that promptly after submission, the court would enter its final Order.

Two principle arguments were advanced by the Debtors during the oral presentation, in support of court approval of the four provisions discussed above and against the Committee's objection and the court's concern. The first can be characterized as, other courts are granting these waivers and restrictions in DIP financing orders. The second is, the Debtors will not survive financially without these loans. The position of Arco Capital at the conclusion of the hearing was succinctly, that it would not loan DIP financing unless all four of the questioned provisions were part of the order entered by the court.

Further argument is contained in the memorandum filed by the Debtors after the hearing, as invited by the Court. In addition to citing cases in which it is contended that the questioned provisions have been approved by courts in other cases, it is argued that Section 105 cannot be used as an attack on a final order. This would appear generally to be correct and may form the grounds for denial of a future motion brought under Section 105, if such motion is such a collateral attack. It does not mean that no person can assert any rights under Section 105 in the future, which is what the literal language of the Proposed Final Order provides. Such a restraint on future speech and right to plead a cause appears way beyond that which the court can or should grant, particularly in a bankruptcy case. The "limitation" upon this lock out restriction of paragraph 11 of the Final

---

[1] Arco Capital's commitment expires at the end of the day of the hearing and the court has not been advised of any extension.

Proposed Order that is pointed to in Debtor's memorandum does not cure the problem. The Debtor points out that the restriction only applies to seeking a Section 105 order upon the "Maturity Date." As "Maturity Date" is defined in the Loan Agreement as including a default, the restriction restricts little.

The brief discussion of case law contained in this order reflects that not all courts are approving terms such as demanded by the lender. Each case must be judged on its merits and the court must apply the law as written by Congress and as interpreted in any controlling precedent applicable. No controlling authority has been cited or located.

As to the argument that the court should approve the proposed order because of the dire need of the Debtors, this appears to be advanced as a type of "doctrine of necessity" argument under which courts have at times been required to at least fill in the gaps where no specific provision of the statute empowered or prohibited the requested relief, as a part of the court's equitable powers. To the extent that this doctrine has validity, it cannot be used to overcome statutory provisions that are in the Code. *See Norwest Bank Worthington v. Ahlers (In re Ahlers)*, 485 U.S. 197, 108 S.Ct. 963 (1988)**.**

At least two courts have opined that waivers of Section 506(c)) are unenforceable as contrary to the congressional mandate set forth in this provision of the Bankruptcy Code and public policy.[2] Other courts have disagreed. However perhaps the most recent decision specifically enforcing such a waiver grounded its decision not on the underlying support for such a waiver, but on the res judicata effect of a prior order approving use of cash collateral that contained the waiver.[3] The latter result underscores the need for the court to examine carefully broad waivers of statutory

---

[2] *McAlpine vs. Comerica Bank-Detroit (In re Brown Bros., Inc.)*, 136 B.R. 470 (Bankr. W.D. Mich. 1991); *In re Ridgeline Structures, Inc.*, 154 B.R. 831 (D.N.H., 1993).

[3] *In re InteliQuest Media Corp.*, 326 B.R. 825 (10th Cir. B.A.P. 2005).

provisions that are demanded by a creditor in an agreement to permit use of cash collateral and/or to provide post petition financing. Another decision cited in Debtors' memorandum enforced a waiver of Section 506(c) based upon an expressed waiver by the trustee. In that case creditors later sought to assert rights under this provision.[4]

This court holds that absent perhaps some most extraordinary circumstance (if at all) not presented in this case, the court should not approve the four broad waivers described above and as objected to by the Committee in this case. There appears no legal basis to read out of the Code sections that the lender finds inconvenient in the factual context of this case. Nor is a basis shown for the breadth of the requested waivers, as to events or persons that would be locked out by these provisions.

The court cannot rewrite the Loan Agreement and then compel the lender, Arco Capital to lend under such a modified agreement. It can only approve or deny approval as to postpetition secured credit.

Wherefore, it is by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that Debtors' Motion Authorizing the Debtors to Obtain Post-Petition, Secured, Super-Priority Financing is denied.


cc:     Parties and Counsel Receiving Notice Via CM/ECF

**End of Order**

---

[4] *In re Molten Metal Technology, Inc.*, 244 B.R. 515 (Bankr. D. Mass 2000). The decision in the United States Supreme Court in *Harford* would now appear to foreclose any such assertion of Section 506(c) rights by other than the trustee.